```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Margaret Treacy,

        Plaintiff,                       CV-05-2901 (CPS)

    - against -                          MEMORANDUM OPINION
                                         AND ORDER
Transportation Security Administration,

        Defendant.

----------------------------------------X
```

SIFTON, Senior Judge

Plaintiff Margaret Treacy brings this action against defendant Transportation Security Administration (TSA) seeking the return of property or, in the alternative, monetary damages. Specifically, Treacy alleges that a pair of miniature heirloom scissors was taken from her at John F. Kennedy Airport (JFK) on May 16, 2002 at a security checkpoint before she boarded a plane. She seeks return of the scissors or, in the alternative, $200. Presently before the Court is defendant TSA's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

The following facts are taken from the complaint and the parties' submissions on this motion. They are undisputed except where noted.

On May 16, 2002 plaintiff Margaret Treacy went to Terminal 7

at John F. Kennedy Airport (JFK) to board a flight with America West Airlines ("America West"). Plaintiff had with her a pair of miniature scissors in a plastic bank book cover. For security reasons, scissors were prohibited beyond the security checkpoint at Terminal 7, which passengers were required to go through before boarding a plane. At that time, Aviation Safeguard ("Safeguard") was the company responsible for performing all the screening functions at the security checkpoint. Security screeners found the scissors and confiscated them. In their ordinary course, screeners turn over prohibited items such as scissors to a JFK terminal operator, which disposes of the items by placing them in a dumpster. Defendant TSA is not currently in possession of plaintiff's scissors.

The Aviation and Transportation Security Act ("ATSA"), Pub. L. No. 107-71, 115 Stat. 597 (codified as amended at 49 U.S.C. § 44901 (2001)), which established TSA, required that TSA assume civil aviation security functions and responsibilities no later than three months after the enactment of ATSA, or by February 19, 2002. *See* 49 U.S.C. § 44901 (2005).

On February 13, 2002, Safeguard, a private security screening company, entered into a contract with the Federal Aviation Administration, acting on behalf of TSA, to perform civil aviation security ("February 13, 2002 Contract"). Safeguard provided screening services at JFK Terminals 6 and 7 until the responsibility for manning checkpoints in those

terminals was assumed by federal government employees on July 9, 2002. Pursuant to the February 13, 2002 Contract, Safeguard was required to "furnish all labor, supervision, and management necessary to provide screening services...." In addition, under the contract, Safeguard was obligated to "manage the total work effort associated with the screening services," and "provide adequate on-site supervision of all employees at all times that a screening location [was] manned."

From February 13, 2002 to July 9, 2002, Safeguard performed all screening functions, which included the screening of passengers and their personal property, at JFK Terminals 6 and 7. TSA employees did not open or inspect any luggage, box, or other item or its contents at JFK Terminals 6 and 7 from February 13, 2002 to July 9, 2002.

The individuals whom Safeguard selected and hired to work as screeners at JFK Terminals 6 and 7 were not employees of TSA. The JFK terminal operators responsible for disposing of prohibited items were also not employed by TSA.

After the incident, plaintiff placed a call to the Transportation Security Administration consumer hotline seeking return of the scissors. On June 18, 2002, the TSA Claims office responded, instructing Plaintiff to file a claim for return of the scissors, and providing a claim form. Plaintiff filed a claim for return of the scissors, but the scissors were not returned to her. Since then, Plaintiff has written letters to

the Department of Justice as well as to the Transportation Security Administration.  On April 15, 2004, the Department of Justice wrote back to Plaintiff, informing her that it had forwarded her letters and attachments to the TSA.

On June 16, 2005, Plaintiff Treacy commenced the present action against defendant TSA seeking return of her property.  On September 1, 2005, defendant TSA filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that this Court lacks subject matter jurisdiction to hear the proceeding.  On October 4, 2005, plaintiff responded to defendant's motion to dismiss arguing only that she surrendered the scissors with the expectation that they would be returned to her upon arrival at her destination or that there would be an option for storage or mailing her the scissors.  She further states she filed the present suit to further the principle that, "should anyone act with authority, the same one must be held responsible for whatever action taken."  Indeed, plaintiff's filing fee of $250 for the present action exceeds the amount of damages she seeks.  On October 17, 2005, the TSA replied to plaintiff's response, noting that plaintiff's opposition papers did not address any of the legal arguments relied upon by the TSA in its brief, and that TSA's guidelines issued to passengers explicitly state that banned items would not be returned to passengers if surrendered at a security checkpoint.

For the reasons that follow, defendant's motion to dismiss

is granted.

## DISCUSSION

### Standard for a Rule 12(b)(1) Motion

Defendant TSA moves to dismiss plaintiff Treacy's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1) provides for the dismissal of a complaint "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When a defendant challenges the legal sufficiency of the plaintiff's jurisdictional allegations, "the court must take all facts alleged in the complaint as true and draw allegations all reasonable inferences in favor of the plaintiff." *Robinson v. Government of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001). "But where evidence relevant to the jurisdictional question is before the court, the district court may refer to that evidence." *Id;* see also *U.S. v. Vasquez,* 145 F.3d 74, 80 (2d Cir. 1998) (On a 12(b)(1) motion, courts "may consider evidence outside the pleading, such as affidavits"). Where, as here, the plaintiff is proceeding *pro se*, her complaint is held to "'less stringent standards that formal pleadings drafted by lawyers.'" *Lehman v. Discovery Commc'n, Inc.*, 217 F. Supp 2d. 342, 346 (E.D.NN.Y. 2002) (*quoting Haines v. Kerner*, 404 U.S. 519, 520 (1972)). But a "party's pro se status 'does not exempt [that] party from compliance with relevant rules of procedural and substantive

law.'" *Evans v. Nassau County*, 184 F. Supp 2d. 238, 242 (E.D.N.Y. 2002) (*quoting Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## Sovereign Immunity

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Federal Deposit Ins. Corp. V. Meyer*, 510 U.S. 471, 475 (1994). Such a waiver "cannot be implied but must be unequivocally expressed," *United States v. King*, 395 U.S. 1, 4 (1969), and "the existence of consent [by the government] is a prerequisite for jurisdiction." *U.S. v. Mitchell*, 463 U.S. 206, 212 (1983).

Although Rule 41(g) of the Federal Rules of Criminal Procedure allows an individual to petition a court for the return of property seized by the United States,[1] it "does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property." *Adeleke v. United States*, 355 F.3d 144, 151 (2d Cir. 2004) (holding that courts are not permitted "to order the United States to pay money damages when, for whatever reason, property is not available for Rule 41(g) return. Such monetary awards are barred by sovereign immunity.") *See also, Okoro v. Callaghan*, 324 F.3d 488, 491 (7th Cir.2003); *United States v. Hall*, 269 F.3d 940, 943 (8th

---

[1] Plaintiff's motion for return of property can be construed as a civil action in equity pursuant to Fed. R. Crim. P. 41(g). *See Mora v. United States*, 955 F.2d 156, 158 (2d Cir. 1992) (noting that "where no criminal proceedings against the movant are pending or have transpired, a motion for the return of property is 'treated as [a] civil equitable proceeding...even if styled as being pursuant to Fed. R. Crim. P. 41 (e) [now Rule 41(g)]") (internal citations omitted).

Cir.2001); *United States v. Potes Ramirez*, 260 F.3d 1310, 1315-16 (11th Cir.2001); *United States v. Jones*, 225 F.3d 468, 470 (4th Cir.2000); *United States v. Bein*, 214 F.3d 408, 415 (3d Cir.2000); *Pena v. United States*, 157 F.3d 984, 986 (5th Cir.1998).

If plaintiff Treacy's complaint is construed as alleging a claim against TSA for the negligence of the security officials who confiscated Treacy's scissors, jurisdiction is similarly lacking under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq*.

"The FTCA is a limited waiver of sovereign immunity making the Federal Government liable to the same extent as a private person for certain torts of employees of the government acting within the scope of their employment." *Leone v. United States*, 910 F.2d 46, 48 (2d Cir. 1990). "The FTCA waiver of sovereign immunity, however, does not extend to independent contractors." *Id*. at 49; *see also*, *U. S. v. Orleans*, 425 U.S. 807, 814 (1976) ("The Federal Tort Claims Act is a limited waiver of sovereign immunity....Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver.")

It is not disputed that the security services of which plaintiff complains were not conducted by TSA employees; instead, they were conducted by the employees of Safeguard, an independent

contractor.  *See* February 13, 2002 Contract.  Therefore, plaintiff Treacy is barred from bringing a negligence claim against defendant TSA.

### *Bivens* Claim

If plaintiff Treacy's claim is construed as a claim alleging that when the Safeguard employee took her scissors and destroyed them, he violated her constitutional rights, her claim also fails.  In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the United States Supreme Court recognized a cause of action against individual government officers for constitutional violations.  However, in *Federal Deposit Insurance Company v. Meyer*, 510 U.S. 471 (1994), the Court ruled that a federal agency cannot be subject to liability for damages under *Bivens*.  Accordingly, any *Bivens* claim brought by plaintiff against defendant TSA must be dismissed.

Nor may plaintiff succeed on a *Bivens* claim against Safeguard.  In *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001), the Supreme Court held that a private entity under contract with a federal agency could not be sued in a *Bivens* action.  The Court noted that *Bivens* actions are available against individual federal officers, not against government or private entities.  Id. at 521 ("Respondent [] seeks a marked extension of *Bivens*, to contexts that would not advance *Bivens'* core purpose of deterring individual officers from engaging in constitutional wrongdoing.  The caution toward extending *Bivens*

remedies into any new context, a caution consistently and repeatedly recognized for three decades, forecloses such an extension here.") The Court went on to note the availability of remedies under state law.[2]

CONCLUSION

For the reasons stated above, defendant's motion to dismiss plaintiff's complaint is granted, and the complaint is dismissed without prejudice to filing a common law claim against Aviation Safeguard in state court.

The clerk is directed to furnish a filed copy of the within to all parties and to the Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York
         November 21, 2005

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge

---

[2]Plaintiff may consider bringing common law claims against Safeguard in state court for, for example, negligent destruction or intentional conversion of property. The defendant might assert a defense, however, that plaintiff consented to the disposal of her scissors when she turned them over at the security checkpoint because TSA guidelines to passengers state that "[p]assengers should be aware that there are no provisions for returning banned items to them when they are left at the security checkpoint," and metal scissors are among the items listed as banned in the guidelines. Restatement Second, Torts § 252. The government has not stated whether the guidelines were posted at the security checkpoint, or that plaintiff knew about the guidelines at the time she surrendered her scissors. In addition, a defense of consent will not stand if the plaintiff can show that consent was obtained by fraud or duress. Restatement Second, Torts § 252A.